Ryan Costello, IL SB #6317378
Assistant Federal Public Defender
Email: ryan_costello@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cr-00350-AB-3 |
| Plaintiff, | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | |
| REXONA CALDARARU, | |
| Defendant. | |

Rexona Caldararu asks this Court for a sentence of 24 months incarceration and four years of supervised release to follow. A sentence of 24 months incarceration is a reasonable sentence that is "sufficient, but not greater than necessary," as required by 18 U.S.C. § 3553(a) because of the mitigating circumstances of her family upbringing, poverty's harsh treatment of her and her family, and the lower Guidelines range for the offense of conviction. Sustaining Ms. Caldararu's objections to the Presentence Investigation Report would drop her Guidelines range to 4-10 months plus the 24-month mandatory minimum penalty for her aggravated identity theft conviction, and the Court could easily vary downward four months to the 24-month mandatory minimum. *See Dean v. U.S.*, 581 U.S. 62, 69 (2017) (finding nothing in 18 U.S.C.

PAGE 1.    DEFENDANT'S SENTENCING MEMORANDUM

§ 924(c) restricts the district court's authority under 18 U.S.C. § 3553(a) to consider the mandatory minimum penalty under § 924(c) when deciding a just penalty for the predicate count).

Ms. Caldararu pleaded guilty to one count of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349; one count of Bank Fraud in violation of 18 U.S.C. § 1344); and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. She has reviewed the Presentence Investigation Report ("PSR") with defense counsel, including all the proposed mandatory, standard, and special conditions of supervision. Ms. Caldararu does not object to the proposed conditions of supervision and will waive reading of the conditions at sentencing.

However, Ms. Caldararu has two objections to the United States' proposed Guidelines range and one other objection to the contents of the Presentence Investigation Report. Specifically, Ms. Caldararu objects to the Probation Office's inclusion of the +2 vulnerable victim related adjustment and objects to the resulting omission of the -2 zero-point offender reduction. These objections would drop her United States Sentencing Guidelines range to 4-10 months + the 24-month mandatory minimum for the aggravated identity theft conviction.

### 1. Vulnerable Victim +2 Adjustment – PSR Paragraph 52.

U.S.S.G. §3A1.1 defines "vulnerable victim" as a person (A) who is a victim of the offense of conviction…and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. Application Note 2 in the Commentary continues by explaining subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. *See also United States v. Castaneda*, 239 F.3d 978, 980 (9th Cir. 2001) (citing U.S.S.G. §3A1.1(b)). "[I]f the factor that makes the victim vulnerable is not 'unusual' for

victims of the offense, the § 3A1.1(b) enhancement is not permitted." *United States v. Nielsen*, 694 F.3d 1032, 1035 (9th Cir. 2012) (quoting *Castaneda*, 239 F.3d at 981). In assessing whether the victim's young age triggered the vulnerable victim adjustment in a coercion and enticement of a minor case, the Ninth Circuit said, "[I[t would have been inappropriate for the district court to apply § 3A1.1 on the basis of A.J.'s minority alone; 'although any victim of abusive sexual contact with a minor might be described as vulnerable on account of her minority, her age does not make her any more vulnerable than other victims of this offense.'" *Nielsen*, 694 F.3d at 1035 (citing *United States v. Wetchie*, 207 F.3d 632, 634 n. 4 (9th Cir. 2000)).

Here, being elderly does not make an individual more susceptible to the offense of pickpocketing. The National Crime Victimization Survey (NCVS) completed an exhaustive review of American households from 1992 to 1997 to measure whether elderly Americans were targeted more frequently for certain types of crimes, namely violent crimes, person to person crimes, and property crimes. The Department of Justice Bureau of Justice Statistics compiled this research into a report, titled Crimes Against Person Age 65 or Older, 1992-1997.[1] The NCVS's methodology included obtaining information by interviewing all occupants age 12 or older of housing units selected to comprise a representative sample. *Klaus* at 29. More specifically, every six months between 1992 and 1997, the Census Bureau interviewed about 85,000 people in about 44,000 housing units about the crimes they had experienced in the previous six months with yearly response rates ranging from 89% to 96% of eligible households and individuals. *Id.* The NCVS separated the age groups into ranges between 12-24 years old, 25-49 years old, 50-64 years old, and 65 or older. *Id.* at 25.

---

[1]  Patsy A. Klaus, BJS Statistician, published January 2000, NCJ 176352, https://bjs.ojp.gov/content/pub/pdf/cpa6597.pdf.

PAGE 3.    DEFENDANT'S SENTENCING MEMORANDUM

The NCVS found that the average annual rate of personal theft was similar to the rates for persons ages 25-49 and ages 60-64 but was half the rate of personal theft per 1,000 persons ages 12-24. *Id*. at 7, 25. They defined personal theft as defined as purse snatching and pickpocketing. Pick pocketing and purse snatching rates were nearly identical for people over 65 when compared to people between 24-49 and 50-65 years old. *Id.* The total sample of pickpocketing crimes and purse snatching crimes was about 46,000 between 1992 to 1997. *Id.* at 4.

The NCVS findings demonstrate that elderly Americans are not more susceptible or more targeted for pickpocketing than other members of the community. The primary reason for applying the vulnerable victim adjustment is to penalize offenders who target people more susceptible to being victims of the crime, with the United States Sentencing Commission providing the example of cancer patients being targeted by a defendant for marketing an ineffective cancer cure. U.S.S.G. § 3A1.1(b), Application Note 2. If the elderly were more vulnerable to pickpocketing than younger Americans, offenders would target them at more disproportionate rates. However, the data on the topic demonstrates elderly Americans are not targeted more than younger Americans for pickpocketing.

Applying the conclusions drawn from the NCVS data to the criteria for applying the +2 vulnerable victim adjustment demonstrates the Court cannot and should not apply the +2 adjustment for Rexona Caldararu. The Court applies the vulnerable victim adjustment where 1) a person is unusually vulnerable due to age, physical or mental condition, or 2) when the person is otherwise particularly susceptible to the criminal conduct. Here, the elderly are not particularly susceptible to pickpocketing, so the second prong is not met. For the victims of Ms. Caldararu's offense, there is no evidence about their physical or mental condition in the record supporting the application of the adjustment. Their age alone does not make them unusually

vulnerable to pickpocketing and there is nothing in the record suggesting their age makes them unusually vulnerable generally. Under either the first or second prong of U.S.S.G. § 3A1.1, the evidence is not sufficient to apply the vulnerable victim adjustment given the elderly are not more susceptible to pickpocketing.

Finally, the party's plea agreement does not contemplate the application of the +2 adjustment for vulnerable victims. Plea Agreement, ECF 49 at 4. The government expended significant time and resources investigating these crimes, interviewing victims, and compiling this case for prosecution. After all these efforts, the government and defense agreed that the vulnerable victim +2 adjustment did not apply. This additional factor combined with the defense arguments about the elderly not being more susceptible to pickpocketing support not applying the +2 vulnerable victim adjustment.

2.     **Objection to the Exclusion of the Zero Point Offender Reduction**.

Ms. Caldararu objects to the exclusion of the -2 zero-point offender reduction under U.S.S.G. § 4C1.1(a). The U.S. Probation office determined that Ms. Caldararu is only ineligible for this reduction because of the Probation Office's proposed application of the +2 vulnerable victim adjustment under U.S.S.G. § 3A1.1(b). *See* U.S.S.G. § 4C1.1(a)(9). Because the +2 vulnerable victim adjustment under U.S.S.G. § 3A1.1(b) does not apply, Ms. Caldararu qualifies for the -2 zero-point offender reduction under U.S.S.G. § 4C1.1(a).

If the Court applies the vulnerable victim adjustment under U.S.S.G. § 3A1.1(b), Ms. Caldararu asks the Court to consider varying downward -2 levels under 18 U.S.C. § 3553(a) to capture the impact of the loss of zero-point offender.

### 3. Correct Calculation of Ms. Caldararu's Guidelines Range.

After the Court removes the +2 vulnerable victim adjustment and applies the -2 zero-point offender reduction, the Guidelines range drops to total adjusted offense level of 12 and Criminal History Category I. Then, the government's -3 level reduction for early resolution under 18 U.S.C. § 3553(a) reduces the total adjusted offense level to 9. A total adjusted offense level of 9 and Criminal History Category I equals a Guidelines range of 4-10 months. Ms. Caldararu's Guidelines range should be 4-10 months + the 24-month mandatory minimum penalty for the aggravated identify theft.

### 4. Objection to the Inclusion of Paragraph 87a Commenting on Ms. Caldararu's Subjective Explanation of Her Mental Health.

Ms. Caldararu objects to the inclusion of paragraph 87a to the Presentence Report because it is unnecessary and relevant commentary on her subjective report about her mental health condition. When asked about her mental health during the Presentence Report interview, Ms. Caldararu expressed her subjective feelings about stress and anxiety about her extended incarceration. A subjective report about her stress during incarceration is categorically a subjective representation of her feelings and not an objective evaluation of Ms. Caldararu's feelings and mental health. Because the Presentence Investigation Report contains references to Ms. Caldararu's criminal convictions in the United Kingdom and France in paragraph 66, adding an objective commentary regarding Ms. Caldararu's subjectively reported mental health condition and feelings is not necessary or relevant to include in the section documenting her mental health. Ms. Caldararu objects to including paragraph 87a entirely.

Additionally, as documented in the Presentence Investigation Report and defense counsel's objection to the Probation Office, Ms. Caldararu's time incarcerated in the United

States has been significantly more distressful for her for cultural and structural reasons. By sentencing, she will have been incarcerated for 9.5 months. This is a significant departure from her prior incarcerations illuminating why this incarceration has been more stressful for her than her previous, shorter incarceration periods.

**Conclusion**

Ms. Caldararu requests that the Court impose a sentence of 24 months of incarceration, followed by 4 years of supervised release.

Respectfully submitted this 20th day of May, 2026.

 */s/ Ryan Costello* 
Ryan Costello, IL SB #6317378